EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2017 TSPR 149 |
|---|---|
| Eric Pagani Padró (TS-9854) | 198 DPR ____ |

Número del Caso: CP-2014-5

Fecha: 7 de agosto de 2017

Materia: Conducta profesional - Censura y apercibimiento por quebrantar los Cánones 18, 35 y 38 de Ética Profesional.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Eric Pagani Padró                    CP-2014-5
    (TS-9854)

PER CURIAM

En San Juan, Puerto Rico, a 7 de agosto de 2017.

En el día de hoy censuramos a un miembro de la profesión legal que quebrantó su compromiso ético de actuar con diligencia y honradez en el descargo de su función notarial. Veamos.

I.

El licenciado Eric Pagani Padró fue admitido al ejercicio de la abogacía el 25 de junio de 1991 y prestó juramento como notario el 3 de julio de 1995.

El 7 de agosto de 2012, la señora Paula Figueroa Ruiz presentó una queja en contra del referido letrado en la que señaló que éste no había preparado adecuadamente cierta escritura de compraventa de un

terreno que ésta alegadamente le había comprado al Lcdo. Américo Martínez Romero.[1] La querellante sostuvo que, a pesar de haberle pagado la suma de $37,000.00 al licenciado Martínez Romero para la compra del mencionado terreno, -- hecho que el notario Pagani Padró alegadamente conocía --, en la escritura de compraventa figuraba como parte vendedora el señor Gary Guillén Pérez, a quien ella alegó nunca haber conocido. Asimismo, la señora Figueroa Ruiz indicó que, al momento de presentar la queja, la escritura de compraventa en cuestión no había logrado acceso al Registro de la Propiedad. La querellante acompañó su queja con evidencia del mencionado pago y con copia de la escritura de compraventa.

El 26 de septiembre de 2012, el licenciado Pagani Padró presentó su contestación a la queja. En esencia, el letrado expresó que -- en el caso ante nos -- su función como notario consistió en preparar la escritura de compraventa y tomar las firmas de los otorgantes, más no participó en las gestiones previas al negocio jurídico realizado por las partes. Por ello, arguyó que desconocía la forma en que la señora Figueroa Ruiz acordó el pago con terceras personas o con quién acordó el mismo.

Con el beneficio de la comparecencia de ambas partes, y a tenor con la Regla 14 (D) del Reglamento de este

---

[1] La señora Paula Figueroa Ruiz sostuvo que el terreno que le compró al licenciado Martínez Romero era remanente de unos terrenos pertenecientes a la Sucesión de Natalio Figueroa, los cuales fueron entregados al licenciado Martínez Romero en pago por unos servicios realizados en un litigio entre los herederos de la mencionada sucesión.

Tribunal, 4 LPRA Ap. XXI-B, referimos el asunto ante nos a la consideración de la Oficina del Procurador General. Luego de realizar la investigación de rigor, dicha Oficina nos rindió su Informe. En el mismo, una vez analizadas las comparecencias de las partes, así como los documentos que obraban en el expediente, se concluyó que el licenciado Pagani Padró infringió los cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Así las cosas, el 17 de julio de 2013, este Tribunal emitió una *Resolución* mediante la cual le concedió al letrado un término de veinte (20) días para expresarse sobre el Informe presentado por la Oficina del Procurador General. El 9 de agosto de 2013, el licenciado Pagani Padró compareció ante nos mediante una *Moción Informativa y Solicitud de Prórroga* en la que expresó su interés en buscar asesoría legal, previo a responder al Informe de la Oficina del Procurador General; por lo que solicitó un término adicional de treinta (30) días para reaccionar al mismo. A dicha solicitud, mediante *Resolución* emitida el 23 de agosto de 2013, este Tribunal accedió.

El 4 de octubre de 2013, dentro del término de tiempo concedido, el licenciado Pagani Padró presentó su *Contestación al Informe Presentado por la Procuradora General*. Allí, el letrado se reiteró en que no participó de las gestiones que las partes realizaron previo a otorgar la escritura en controversia. Expresó que su participación se limitó, exclusivamente, a autorizar la Escritura de

Compraventa Núm. 1 de 29 de marzo de 2012, en la que comparecieron los señores Gary Guillén Pérez y la señora Figueroa Ruiz, como vendedor y compradora, respectivamente. Asimismo, el licenciado Pagani Padró indicó que el referido documento público no había logrado acceso el Registro de la Propiedad debido a un problema de tracto registral relacionado a la Escritura Número. 6 del 29 de agosto de 2011, sobre Segregación, Partición y Adjudicación, Ratificación de Compraventa y Cesión, otorgada ante el notario Martínez Romero. **En ese sentido, reconoció que debió descansar en un estudio de título antes de plasmar el negocio jurídico en el instrumento público, cosa que no hizo.** Por último, adjudicó sus errores al descuido y confianza excesiva en la información que le fue suministrada por una parte.

Evaluados ambos escritos, este Tribunal refirió el asunto ante la Oficina del Procurador General para que, cónsono a la Regla 14 (E) de nuestro Reglamento, 4 LPRA Ap. XXI-B, R. 14 (E), presentara la correspondiente querella en contra del licenciado Pagani Padró por violación a los cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, 35 y 38, respectivamente. Oportunamente, el abogado contestó la referida querella y negó las alegaciones en su contra. En síntesis, esbozó los mismos planteamientos que en sus contestaciones anteriores.

Evaluadas las comparecencias de ambas partes, el 3 de febrero de 2015 este Tribunal emitió una *Resolución* en la

que designó a la Hon. Ygrí Rivera de Martínez, Ex Jueza del Tribunal de Apelaciones, como Comisionada Especial para que recibiera prueba, realizara determinaciones de hecho y nos brindara las recomendaciones pertinentes.

En cumplimiento con lo anterior, la Comisionada Especial celebró varias vistas a las que compareció tanto la Oficina del Procurador General como el querellado, acompañado por su representación legal. Precisa señalar que, en una de las vistas celebradas, la Oficina del Procurador General, a través de sus representantes, informó que la señora Figueroa Ruiz les había manifestado no tener interés en que se continuara con el procedimiento disciplinario de epígrafe, toda vez que la escritura en controversia había logrado acceso al Registro de la Propiedad, luego de que el querellado realizara las gestiones para ello.

Concluidas las referidas vistas, la Comisionada Especial nos rindió su informe con las determinaciones de hechos y recomendaciones de rigor. Es menester señalar que, entre los hechos que ésta encontró probados se encuentran, en lo aquí pertinente, los siguientes:

1. El 7 de agosto de 2012, la Sra. Paula Figueroa Ruiz presentó una queja contra el Lcdo. Eric Pagani Padró.

2. La intervención del Lcdo. Eric Pagani Padró en ese negocio jurídico fue exclusivamente en su carácter de notario a los fines de otorgar la escritura de compraventa.

[…]

4. El Lcdo. Pagani Padró fue contratado por el Sr. Gary Guillén Pérez dueño registral de la propiedad, para otorgar la escritura de compraventa del solar.

5. **El licenciado Pagani Padró se reunió con anterioridad al otorgamiento de la escritura con el Sr. Guillén Pérez y el Lcdo. Américo Martínez para conocer los pormenores del negocio jurídico que ambos acordaron, para consignarlos en la escritura. De dicha reunión resultó que éstos le proveyeron información de la propiedad, datos de los otorgantes, precio de la compraventa, entre otros detalles. El licenciado Pagani Padró no se reunión previo al otorgamiento con la Sra. Paula Figueroa, quien era la compradora.** (Énfasis nuestro)

6. El licenciado Pagani Padró indicó que el vendedor le informó que la señora Figueroa le había satisfecho el precio de compraventa.

[…]

8. **El licenciado Pagani Padró indicó que no tuvo participación alguna al momento en que se llegaron a los acuerdos del negocio jurídico esbozados en la escritura, ya que su labor se limitó a preparar la escritura y a tomar la firma de los otorgantes.** (Énfasis nuestro)

[…]

11. La escritura otorgada por el licenciado Pagani no logró inscribirse en primera instancia, por problemas de tracto no imputables al documento autorizado por él, sino por deficiencias relacionadas y señaladas a la escritura previa, que otorgó el Lcdo. Américo Martínez Romero, Escritura Núm. 6 del 29 de agosto de 2011, de Segregación, Partición, Adjudicación, Ratificación de Compraventa y Cesión, las cuales tenían que ser inscritas, previo al negocio jurídico que otorgó el licenciado Pagani.

12. El licenciado Pagani realizó con prontitud las gestiones pertinentes para lograr el acceso al

Registro de la Propiedad de los negocios jurídicos previos autorizados por otro notario y una vez corregidas, se inscribió el negocio jurídico de compraventa que éste otorgó, sin ulterior trámite.

[…]

15. El título propietario de la señora Figueroa no había podido ser inscrito, ya que los negocios previos otorgados por el Lcdo. Américo Martínez, fueron objeto de señalamientos de falta por parte del Registrador de la Propiedad y dicho notario no los había corregido, aun cuando se le había requerido en múltiples ocasiones que resolviera los señalamientos hechos por el Registrador.

[…]

En vista de lo anterior, la Comisionada Especial concluyó que, con su conducta, el licenciado Pagani Padró incurrió en violación a los cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. Ello, en esencia, al no actuar con diligencia y honradez en el descargo de su función notarial.

Ahora bien, aun cuando no nos recomendó una sanción en específico, la Comisionada Especial recomendó que, si este Tribunal optaba por imponer alguna, considerásemos como atenuante las gestiones que realizó el licenciado Pagani Padró con posterioridad a conocer la situación registral de la propiedad objeto de la compraventa y dirigidas a corregir la misma, así como los siguientes factores, a saber: 1) que el licenciado Pagani Padró aceptó, desde el inicio del procedimiento disciplinario, su responsabilidad en la controversia que nos ocupa; 2) que se trata de una conducta aislada y es su primera falta; 3) que nadie ha

salido perjudicado por sus actuaciones; y 4) que el licenciado Pagani ha gozado de una buena reputación desde que fue admitido a la práctica de la profesión hace más de 24 años.

Establecido lo anterior, contando con el beneficio de la comparecencia de ambas partes, del Informe de la Comisionada Especial, así como la prueba que obra en el expediente, procedemos, pues, a disponer del proceso disciplinario ante nuestra consideración.

## II.

Como es sabido, el notario o la notaria en Puerto Rico es custodio de la fe pública notarial. Como custodio de la fe pública notarial, "*cuando un notario [o notaria] autoriza un documento da fe y asegura que ese documento cumple con todas las formalidades de ley […] y que se trata de una transacción válida y legítima*". *In re Vázquez Pardo*, 185 DPR 1031, 1041 (2012); *In re González Maldonado*, 152 DPR 871 (2000); *In re Rivera Arvelo y Ortiz Velázquez*, 132 DPR 840 (1993). Por tal razón, "*la función notarial debe ejercerse con extremo cuidado y desempeñarse con esmero, diligencia y estricto celo profesional*". *In re Maldonado Maldonado*, 2017 TSPR 55, 197 DPR __ (2017); *In re Pacheco Pacheco*, 192 DPR 553, 562 (2015); *In re Toro González II*, 193 DPR 877,888 (2015).

En ese sentido, el notario o la notaria, al autorizar una escritura pública tiene cuatro deberes principales, a saber: 1) indagar la voluntad de los otorgantes; 2)

formular la voluntad indagada; 3) **investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio**; y 4) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, los efectos y consecuencias del negocio jurídico, y además, se den cuenta de los posibles riesgos, si alguno, que corren al llevar a cabo el referido negocio jurídico. *In re Palmer Ramos*, 195 DPR 245 (2016); *In re Toro González*, II, 193 DPR 877 (2015); *In re Belén Trujillo*, 184 DPR 793 (2012).

Cónsono con lo anterior, la fe pública notarial, a su vez, le impone al notario o a la notaria el deber de hacer las investigaciones mínimas, tales como verificar el estado registral de la propiedad a la fecha en que las partes otorguen la escritura. *In re Martínez Almodóvar*, 180 DPR 805 (2011); *In re Torres Alicea*, 175 DPR 456 (2009); *Feliciano v. Ross*, 165 DPR 649 (2005). **Autorizar una escritura sin conocer sus antecedentes registrales, mediante la realización de un estudio de título, constituye una violación a la fe pública notarial.** *In re Vargas Velázquez*, 193 DPR 681 (2015); *In re Ayala Oquendo*, 185 DPR 572 (2012); *In re Aponte Berdecía*, 161 DPR 94 (2004).

Así pues, el notario o la notaria tiene la obligación de suplir explicaciones, aclaraciones y advertencias que en todo caso hagan falta, para propiciar y cerciorarse de un estado de conciencia informada al momento de autorizar un instrumento público. *In re Maldonado Maldonado*, 2017 TSPR

55, 197 DPR __ (2017); *In re Palmer Ramos*, 195 DPR 245 (2016); *In re Toro González II*, 193 DPR 877 (2015). Cuando un notario o notaria incumple con tal obligación, violenta la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001 *et seq.*, y el Código de Ética Profesional, *supra*. *In re Belén Trujillo*, *supra*.

En particular, con su incumplimiento, el profesional del derecho pudiera estar quebrantando el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX C.18, el cual, como se sabe, dispone lo siguiente:

> Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.
>
> **Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.**
>
> Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas de su cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas de su cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra sino el espíritu y los propósitos que la forman. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia. (Énfasis suplido).

Como podemos apreciar, dicho canon requiere que los abogados y abogadas, así como los notarios y las notarias, sean especialmente diligentes en el cumplimiento de sus obligaciones, voluntariamente asumidas, como custodios de la fe pública notarial. *In re Aponte Berdecía*, 161 DPR 94 (2004). Este compromiso debe ser acatado con mayor diligencia por el notario o notaria, precisamente porque, como mencionamos, "*su función es la base de la fe pública notarial y es quien tiene a su encargo dar eficacia a los actos y negocios jurídicos que quieran realizar las partes*". *In re Vargas Velázquez*, 190 DPR 730 (2014). *Véanse*, además, *In re González Acevedo*, 2017 TSPR 25, 197 DPR ___ (2017); *In re Ortiz Medina*, 175 DPR 43 (2008).

Dicho de otro modo, por el carácter público de su función, los notarios y las notarias deben ser sumamente cautelosos en el ejercicio de su práctica y siempre deben tener presente las consecuencias nefastas que su negligencia puede tener sobre los negocios jurídicos. *In re García Cabrera*, 188 DPR 196, 210 (2013); *In re Muñoz Fernós*, 184 DPR 679, 685 (2012); *In re Rodríguez Báez*, 129 DPR 819, 823 (1992).

De otra parte, y por ser igual de pertinente al proceso disciplinario que nos ocupa, es menester repasar lo dispuesto en el Canon 35 del Código de Ética Profesional, *supra*, el cual establece que:

> **La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros, debe ser sincera y honrada.**

> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para trasmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
>
> El abogado debe ajustarse a la sinceridad de los hechos, al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en el caso, es también altamente reprochable. (Énfasis suplido).

Como se puede apreciar, dicho canon compele a los abogados y abogadas a realizar su magisterio con sinceridad y honradez, así como a comportarse de manera digna tanto en su labor estrictamente legal como ejerciendo su función notarial. *In re Belén Trujillo*, *supra*; *In re Vera Vélez*, 148 DPR 1 (1998); *In re Torres Olmeda*, 145 DPR 324 (1998). Tal deber adquiere mayor importancia en esa última instancia.

Sobre este particular, en reiteradas ocasiones hemos señalado que faltar a la veracidad de los hechos es una de las faltas más graves que puede cometer un notario. *In re Montañez Miranda*, 157 DPR 275 (2002); *In re González Maldonado*, 152 DPR 871 (2002); *In re González Maldonado*, 152 DPR 871 (2000). Dar fe de un hecho falso, independientemente de si es de forma intencional o no, conlleva una violación al Canon 35 del Código de Ética Profesional. *In re Belén Trujillo*, *supra*; *In re Martínez Almodóvar*, *supra*. *"El elemento de intención no se requiere*

*para violentar este canon, el quebrantamiento puede ser producto de un desempeño profesional carente de la cautela y celo que demanda la función pública del notario o una confianza desmesurada en las manifestaciones de otros compañeros de profesión".* In re Rivera Grau, 2016 TSPR 212, 196 DPR ___ (2012); *In re Belén Trujillo, supra,* en la pág. 802; *In re Vera Vélez,* 148 DPR 1 (1999).

Por último, la situación de hechos ante nuestra consideración nos invita a hacer mención de las obligaciones impuestas por el Canon 38 del Código de Ética Profesional, el cual, en lo pertinente, señala que:

> El abogado deberá esforzarse al máximo de su capacidad en la exaltación del honor y dignidad de su profesión, aunque al así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. […]

> Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos. […]

De conformidad con lo anterior, todo abogado o abogada tiene el deber de ser escrupuloso en el ejercicio de sus funciones profesionales, e incluso debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de impropiedad. *In re Rivera Vicente,* 172 DPR 349 (2007); *In re Avilés, Tosado,* 157 DPR 867 (2002); *In re Bonilla*

*Rodríguez*, 154 DPR 684 (2001). Al respecto, hemos señalado que "*es imprescindible que el notario observe la mayor pureza y honestidad en el descargo de la fe pública notarial*". *In re Sepúlveda Girón*, 155 DPR 345 (2001); *In re Vargas Velázquez, supra*; *In re Belén Trujillo*; 184 DPR 793, 801 (2012).

En ese sentido, cuando las controversias ante nuestra consideración versen sobre un notario o notaria que falta a la verdad y, por ende, a la fe pública notarial, este Tribunal ha sentenciado que "*[n]o se requiere que el notario haya faltado a la verdad intencionalmente para faltar a su fe notarial y al Canon 38 [...]. Su violación puede ser el resultado de un desempeño profesional carente de la cautela y el celo que demanda la función pública del notario*". *In re Gordon Menéndez 1*, 171 DPR 210, 216 (2007); *In re Avilés, Tosado, supra*, en la pág. 892; In re Sepúlveda Girón, 155 DPR 345 (2001).

Es, pues, a la luz de la normativa antes expuesta, que procedemos a disponer del proceso disciplinario ante nos.

## III.

Como mencionamos anteriormente, en el presente caso, el licenciado Pagani Padró fungió como notario en la autorización de la Escritura de Compraventa Núm. 1 de 29 de marzo de 2012, en la que el señor Guillén Pérez y la señora Figueroa Ruiz comparecieron como vendedor y compradora, respectivamente. Según arguyó la señora

Figueroa Ruiz, en la referida escritura de compraventa figuraba como parte vendedora una persona que ella alega nunca haber conocido.

En cuanto a este primer señalamiento por parte de la señora Figueroa Ruiz, de la prueba recibida, ha quedado meridianamente claro que el licenciado Pagani Padró, al otorgar la escritura pública en controversia -- y sin indagar sobre el negocio jurídico otorgado entre las partes --, dio fe de que la querellada había pagado al vendedor, el señor Guillén Pérez, la totalidad de la deuda; ello, cuando desconocía que a quien la señora Figueroa Ruiz le pagó la deuda fue al licenciado Martínez Romero. Sin duda alguna, el autorizar la referida escritura pública sin realizar una investigación adecuada y responsable, constituye una violación a los cánones 35 y 38 del Código de Ética Profesional, *supra,* por parte del licenciado Pagani Padró.

De otra parte, la señora Figueroa Ruiz alegó también que la escritura que dio inicio a este proceso disciplinario no había logrado acceso al Registro de la Propiedad. Sobre este segundo señalamiento, del expediente que obra en nuestro poder claramente se desprende que el licenciado Pagani Padró reconoció que -- previo a redactar el instrumento público en cuestión, -- cometió un error de juicio al no realizar un estudio de título sobre la propiedad objeto de la compraventa. El letrado en cuestión, de forma errada, en aras de determinar quién era

el titular del bien a inscribirse, optó por descansar en un instrumento público -- relacionado con la propiedad en controversia --, previamente autorizado por el licenciado Martínez Romero, de donde alegadamente surgía la titularidad del inmueble. Al así hacerlo -- al no realizar las gestiones que las leyes y los reglamentos que gobiernan estos asuntos requieren previo al otorgamiento del instrumento público, tal como una investigación registral de la propiedad -- el licenciado Pagani Padró incumplió con su deber de ser diligente en el cumplimiento de sus obligaciones como depositario de la fe pública notarial. Con tal proceder, además, incurrió en violación al Canon 18 del Código de Ética Profesional. *Íd.*

En fin, al trasladar la normativa antes expuesta a los hechos ante nuestra consideración, resulta forzoso concluir que -- con su conducta -- el letrado objeto del presente proceso disciplinario quebrantó su compromiso ético de actuar con diligencia y honradez en el descargo de su función notarial, principios celosamente custodiados por los cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

Ahora bien, en reiteradas ocasiones hemos señalado que al momento de imponer una sanción disciplinaria, hemos de tomar en cuenta los siguientes factores: 1) la buena reputación del abogado en la comunidad; 2) su historial previo; 3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; 4)la aceptación de

la falta y su sincero arrepentimiento; 5) si se trata de una conducta aislada; 6) el ánimo de lucro que medió en su actuación; 7) el resarcimiento al cliente; y 8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. *In re Rodríguez García*, 2017 TSPR 33, 197 DPR ___ (2017); *In re Vilches López*, 2016 TSPR 208, 196 DPR__ (2016); *In re Cotto Luna*, 187 DPR 584, 593-594 (2012).

Así pues, como ya mencionamos, en el presente caso el licenciado Pagani Padró aceptó, desde el inicio del procedimiento disciplinario, su responsabilidad en la controversia y mostró un sincero arrepentimiento por la falta cometida. Además, se trata de la primera falta por parte del letrado, quien ha gozado de una buena reputación en su comunidad desde que fue admitido a la práctica de la profesión, hace más de veinte años. De otra parte, nadie ha salido perjudicado por la conducta desplegada por éste, ya que el licenciado Pagani Padró realizó las gestiones necesarias para que el instrumento público en cuestión lograra acceso al Registro de la Propiedad. Todos esos factores deben ser considerados por este Tribunal al momento de imponer una sanción.

IV.

En vista de todo lo anterior, censuramos la conducta desplegada por el licenciado Pagani Padró y le apercibimos de su deber de observar de forma escrupulosa los principios deontológicos que se recogen en el Código

de Ética Profesional. Asimismo, le apercibimos que, de incurrir en otro acto que contravenga las normas deontológicas antes señaladas, se expone a medidas disciplinarias más severas, incluyendo su suspensión del ejercicio de la abogacía y la notaría.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:


Eric Pagani Padró                    Núm. CP-2014-5
     (TS-9854)


                        SENTENCIA


     En San Juan, Puerto Rico, a 7 de agosto de 2017.


          Por los fundamentos expuestos en la Opinión
     *Per Curiam* que antecede, la cual se hace formar
     parte de la presente Sentencia, censuramos la
     conducta desplegada por el Lcdo. Eric Pagani Padró
     y le apercibimos de su deber de observar de forma
     escrupulosa los principios deontológicos que se
     recogen en el Código de Ética Profesional.
     Asimismo, le apercibimos que, de incurrir en otro
     acto que contravenga las normas deontológicas
     antes señaladas, se expone a medidas
     disciplinarias más severas, incluyendo su
     suspensión del ejercicio de la abogacía y la
     notaría.

          Lo pronunció, manda el Tribunal y certifica
     el Secretario del Tribunal Supremo de Puerto Rico.
     La Juez Asociada señora Rodríguez Rodríguez no
     intervino.




                         Juan Ernesto Dávila Rivera
                         Secretario del Tribunal Supremo