EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
| Norberto Colón Alvarado (TS-12,160) | 2023 TSPR 98<br><br>212 DPR ___ |

Número del Caso: AB-2021-0201

Fecha: 8 de agosto de 2023

Oficina del Procurador General:

     Lcdo. Omar Andino Figueroa
     Subprocurador General

     Lcda. Mabel Sotomayor Hernández
     Subprocuradora General

     Lcda. Yaizamarie Lugo Fontánez
     Procuradora General Auxiliar


Departamento de Justicia:

     Lcda. Yolanda Rodríguez Torres
     Fiscal Especial


Oficina de Inspección de Notarías:

     Lcdo. Manuel E. Ávila De Jesús
     Director


 Abogado del Promovido:

     Lcdo. Juan E. Medina Quintana

Materia: Conducta Profesional – Suspensión indefinida e inmediata del ejercicio de la notaría por violación a los Arts. 12, 56 y 57 de la Ley Notarial; las Reglas 12, 29, 65 y 67 del Reglamento Notarial, y los Cánones 18, 35 y 38 de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| *In re*:<br><br>Norberto Colón Alvarado<br>(TS-12,160) | AB-2021-0201 |

**PER CURIAM**

En San Juan, Puerto Rico, a 8 de agosto de 2023.

Una vez más nos vemos en la obligación de ejercer nuestro poder disciplinario para suspender a un miembro de la clase letrada de nuestra Isla por conductas que se encuentran reñidas con las disposiciones de la Ley Notarial de Puerto Rico, *infra* y nuestros postulados éticos. Como detallaremos a continuación, las gestiones que dan paso a la presente *Opinión Per Curiam* surgen de transacciones indebidas realizadas por el Lcdo. Norberto Colón Alvarado al autorizar ciertos traspasos de titularidad de vehículos de motor. Por entender que el licenciado Colón Alvarado faltó a su deber hacia la verdad y empeñó la fe pública notarial al momento de autenticar varias firmas de manera ilegítima, y certificar como veraces ciertos hechos falsos, con conocimiento de su falsedad, lo suspendemos del ejercicio de la notaría de manera inmediata e indefinida.

## I.

El Lcdo. Norberto Colón Alvarado (promovido) fue admitido al ejercicio de la abogacía el pasado 21 de enero de 1998 y prestó juramento como notario e1 11 de junio del mismo año.

En lo atinente a este caso, el 15 de diciembre de 2021, la Lcda. Estelle L. Vilar Santos (promovente), quien se desempeñaba como Fiscal Especial de la Unidad de Delitos Económicos del Departamento de Justicia de Puerto Rico, presentó una *Queja* en contra del licenciado Colón Alvarado. En esencia, la promovente señala múltiples irregularidades en la función notarial del promovido, particularmente, en seis (6) traspasos de vehículos que fueron legitimados ante este mediante las declaraciones juradas que más adelante identificaremos.

En esa línea, la fiscal Vilar Santos adujo que el promovido legitimó varios traspasos sin tener a las partes firmantes presentes, que legitimó firmas que no pertenecían a las partes declarantes y, finalmente, que acreditó la firma de una persona a pesar de que la misma se encontraba fallecida al momento de la declaración. Entre los testimonios investigados e identificados por la promovente en su *Queja*, destacamos los siguientes:

(1) Afidávit Número 21550, mediante el cual autorizó el traspaso del título de un vehículo marca Jeep del año 1971;

(2) Afidávit Número 22148, mediante el cual autorizó el traspaso del título de un vehículo marca Suzuki del año 2001;

(3) Affidávit Número 26109, mediante el cual autorizó el traspaso del título de un vehículo marca Honda del año 2007.[1]

En lo referente al **testimonio 26109**, surge que este fue suscrito y jurado ante el promovido el 4 de enero del 2018 por los comparecientes Ida G. Borrero Espada, como vendedora, y Mariano Guillermo Santiago, como comprador, **sin la presencia de la señora Borrero Espada**. Del informe surge que <u>el licenciado Colón Alvarado le explicó a la señora Borrero Espada que, como él la conocía personalmente, ella no tenía que estar presente al momento de notarizar el documento</u>. Además, a pesar de conocer que la señora Borrero Espada no fue quien firmó la certificación de título para el traspaso del vehículo de motor, el promovido dio fe de tal falsedad en el *Informe Mensual Sobre Actividad Notarial* correspondiente a la fecha del otorgamiento.

Por otro lado, mediante el **testimonio 21550**, el cual tiene fecha del 29 de abril de 2016, el promovido consignó el traspaso de título de vehículo de motor otorgado por Felipe Colón Rodríguez y Juan De Jesús Colón, a quienes identificó mediante sus licencias de conducir. Sin embargo, según los datos de estadística vital investigados

---

[1] Los otros testimonio investigados y señalados por la fiscal promovente son los siguientes:
  1) Afidávit Número 23236, mediante el cual autorizó el traspaso del título de un vehículo marca Suzuki del año 2013;
  2) Afidávit Número 24281, mediante el cual autorizó el traspaso del título de un vehículo marca Nissan del año 2005; y
  3) Afidávit Número 24750, mediante el cual autorizó el traspaso del título de un vehículo marca Suzuki del año 2008.

por la ODIN, **el señor Colón Rodríguez <u>había fallecido el 6</u>** **<u>de marzo de 2011</u>**. Cabe destacar, además, que el señor De Jesús Colón le **declaró bajo juramento al Fiscal Auxiliar Miguel R. Alameda Rodríguez <u>que no estuvo presente cuando</u>** **<u>el promovido lleno el documento de traspaso</u>**.

Finalmente, en cuanto al **testimonio 22148**, surge que el 30 de agosto del 2016 el promovido autenticó las firmas de Carmen H. Morales Rosario, como vendedora de un automóvil, y Edwin Rivera Feliciano, como comprador. Sin embargo, en una fecha posterior, la señora Morales Rosario presentó una *Querella* ante la Policía de Puerto Rico en la que indicó que se le había extraviado la licencia y el título de propiedad de su vehículo de motor.[2]

Posteriormente, el 4 de abril de 2022, el licenciado Colón Alvarado presentó su *Contestación a la Queja*. En suma, negó recordar la mayoría de los hechos allí imputados. Ahora bien, en cuanto al *Affidavit* número 26109, el letrado aceptó haber actuado erróneamente al acreditar la identificación de las partes aun cuando tenía conocimiento personal de que una de las partes comparecientes —*la vendedora*— no era quien decía ser.

Eventualmente, el asunto fue referido a la Oficina de Inspección de Notarías (ODIN) para que nos presentara el

---

[2] Según la Promovente, durante una entrevista realizada por la uniformada, el señor Rivera Feliciano informó haber entregado dichos documentos a la Sra. Emily García Rodríguez y su esposo, el Sr. José Cedeño Robles, quienes gestionaron por su cuenta el traspaso.

correspondiente informe. Así lo hizo el 14 de abril de 2023. En este, la ODIN concluyó que el licenciado Colón Alvarado infringió en múltiples ocasiones la fe pública notarial recogida en la Ley Notarial de Puerto Rico y el Reglamento Notarial.[3]

Consecuentemente, le otorgamos un término al promovido para que se expresara en cuanto al *Informe* de la ODIN y a la Oficina del Procurador General de Puerto Rico para que nos sometiera su correspondiente informe. En cumplimiento con lo ordenado, el 6 de julio de 2023 el licenciado Colón Alvarado presentó su réplica al informe.

Contando con el beneficio de la comparecencia tanto del promovido y de la ODIN, y ante las serias imputaciones que surgen de este procedimiento ético, pasamos a resolver.

## II.

Los profesionales del Derecho Notarial, como todos los letrados del país, están sujetos a cumplir con múltiples preceptos éticos que rigen la profesión. La función notarial está regida por las disposiciones de la Ley Notarial de Puerto Rico, *supra*, del Reglamento Notarial de Puerto Rico y del Código de Ética Profesional. Además de la inestabilidad que puede causar la inobservancia de estos postulados, también puede acarrear sanciones severas para los notarios que infrinjan algunos

---

[3] 4 LPRA sec. 2001 *et seq*. y 4 LPRA Ap. XXIV, respectivamente.

de estos preceptos.[4] Por ello, los notarios deben ejercer su función con extremo cuidado, esmero y celo profesional.[5]

El Artículo 2 de la Ley Notarial de Puerto Rico, *supra*, consagra el principio de la fe pública notarial, y dispone que

> "El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento".[6]

En sintonía con lo anterior, hemos expresado que "la función que ejerce el notario va más allá de actuar como un legalizador de firmas autómata, ya que posee el deber de verificar que el instrumento público cumpla con todas las formalidades de la ley, que sea legal y verdadero, y finalmente, que se trate de una transacción legítima y válida".[7]

Por otra parte, el Artículo 56 de la Ley Notarial, *supra*, establece lo siguiente:

---

[4] *In re González Pérez*, 208 DPR 632 (2020); *In re Sánchez Reyes*, 204 DPR 548 (2020); *In re Charbonier Laureano*, 204 DPR 351 (2020).
[5] *In re Pagani Padró*, 198 DPR 812, 820 (2017); *In re Maldonado Maldonado*, 197 DPR 802, 809 (2017).
[6] 4 LPRA sec. 2002.
[7] *In re Sánchez Reyes*, 204 DPR 548, 566 (2020).

Llámese testimonio o declaración de autenticidad al documento mediante el cual un Notario a requerimiento de parte interesada, da testimonio de fe de un documento no matriz, además de la fecha del testimonio:

(1) **de la legitimación de las firmas que en él aparezcan**, siempre que no se trate de los actos comprendidos en el Artículo 5 de esta Ley ni en los incisos 1 al 6 del Artículo 1232 del Código Civil vigente;

(2) **de haber tomado juramento por escrito**;

[…]

El Notario no asume responsabilidad alguna por el contenido del documento privado cuyas firmas legitime.

En consecuencia, los notarios y las notarias no pueden dar fe notarial en un documento en el cual la persona que pretende la otorgación no compareció personalmente.[8] Sobre este particular, hemos expresado que

"[L]os notarios y las notarias deben abstenerse de dar fe notarial de una declaración jurada si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente". De hacerlo, ese funcionario "transgrede la fe pública notarial y perjudica la confianza depositada en el sistema de autenticidad documental".[9]

Asimismo, la Regla 67 del Reglamento Notarial, *supra*, establece de manera diáfana que, el testimonio de legitimación de firma acredita el hecho de que, en determinada fecha, <u>se firmó un documento en presencia del notario o de la notaria y que esa persona es quien dice ser</u>. También, establece que la legitimación de la firma podrá o no comprender el juramento. Además, obliga al

---

[8] *In re González Pérez, supra*, pág. 647.
[9] Íd., pág. 648, citando a *In re Flores Martínez*, 199 DPR 691, 702 (2018).

notario o notaria a hacer constar, tanto en el testimonio como en el *Registro de Testimonios*, que conoce personalmente a la parte firmante o que, en la alternativa, la ha identificado mediante los métodos supletorios que provee el Art. 17 de la Ley Notarial de Puerto Rico, *supra*. Similar disposición contiene la Regla 29 del Reglamento Notarial, *supra*. De esta forma, el notario o la notaria garantiza la identidad de la persona firmante y que el acto se realizó en su presencia.[10]

En ese sentido, **la acción de certificar un hecho falso es una de las faltas más graves que puede cometer un miembro de la profesión legal, aun cuando no medie intención**. Este tipo de infracción podría acarrear la suspensión inmediata e indefinida de la práctica de la abogacía y de la notaría.[11] Esto es así pues autorizar una declaración jurada sin la presencia del firmante constituye la certificación de un hecho falso que transgrede la fe pública notarial y afecta la confianza del sistema de autenticidad documental.

De hecho, hemos expresado en múltiples ocasiones que dar fe de un hecho falso no solo contraviene la Ley Notarial y el Reglamento Notarial, sino que además quebranta los Cánones 18, 35 y 38 del Código de Ética Profesional, por lo que podría acarrear la suspensión

---

[10] *In re González Pérez, supra*, pág. 647; *In re Rafols Van Derdys*, 211 DPR ___ (2022). Véase, además, *In re Villalona Viera*, 206 DPR 360 (2021).
[11] *In re Rafols Van Derdys*, supra.

inmediata e indefinida de la práctica de la abogacía y de la notaría.[12]

Por otro lado, el Art. 12 de la Ley Notarial de Puerto Rico, *supra*, y la Regla 12 del Reglamento Notarial, supra, impone a los notarios y a las notarias el deber de rendir un *Informe de Actividad Notarial Mensual*. En este, deben hacer constar el instrumento o testimonio autorizado, entre otros: (1) por número del instrumento o testimonio; (2) con los nombres de las partes comparecientes a la otorgación; (3) la fecha de autorización; (4) la cuantía objeto del instrumento o testimonio; (5) los y las testigos del instrumento o testimonio (de ser necesarios), y (6) el objeto del instrumento o testimonio.[13]

Los índices de actividad garantizan la certeza de los documentos en los que intervienen los notarios y las notarias y "evitan el riesgo de manipulación y fraude". Por ello, el incumplimiento con este requisito menoscaba la fe pública investida en los miembros de la comunidad notarial del país.[14]

**III.**

Las delimitaciones ético-legales que se le impone a la práctica jurídica no buscan otra cosa que no sea

---

[12] Íd. Véanse, además, *In re González Pérez*, supra e *In re Villalona Viera*, supra, pág. 370.
[13] *In re González Pérez, supra; In re Cabrera Acosta*, 193 DPR 461, 466 (2015).
[14] Íd.

propiciar que los abogados se desempeñen acorde a los más altos principios de conducta para beneficio de la profesión, la ciudadanía y las instituciones del país. Los notarios, dentro de su función particular, no están exceptuados de ello.

En lo pertinente a este caso, surge de la investigación e *Informe* que nos presentó la ODIN, que el licenciado Colón Alvarado infringió en múltiples ocasiones preceptos estatuidos en la Ley Notarial y el Reglamento Notarial.

En primer lugar, no existe controversia en cuanto a que en el testimonio número 26109, **el promovido dio fe de un hecho del cual conocía plenamente su falsedad**. Esta acción fue reconocida por el licenciado Colón Alvarado al admitir que una de las partes firmantes en el testimonio, la Sra. Ida G. Borrero Espada —*a quien conocía personalmente*—, no fue la persona que firmó ante él. No conteste con lo anterior, el promovido también dio fe de tal falsedad al incluirlo en el *Informe Mensual Sobre Actividad Notarial*. Claramente, esta gestión denotó una falta clara hacia el deber que tenía el letrado para con la verdad.

Por otro lado, en cuanto a los testimonios número 21550 y 22148, no hay duda de que, a simple vista, las transacciones allí consignadas carecen de garantías de

confiabilidad atribuibles únicamente a la función indebida del notario promovido.

En cuanto al testimonio 21550, este **fue autorizado el 29 de abril de 2016** por el promovido y otorgado por Felipe Colón Rodríguez y Juan De Jesús Colón, quienes fueron identificados por sus licencias de conducir. Según quedó demostrado, el compareciente Colón Rodríguez había fallecido el 6 de marzo de 2011, es decir, cinco (5) años antes de que se otorgara la declaración jurada para el traspaso vehicular. Esta gestión fue consignada en el informe mensual correspondiente. De igual forma, ante la investigación que llevo a cabo el Negociado de la Policía y el Departamento de Justicia, la otra parte firmante en el mencionado testimonio, el señor De Jesús Colón declaró bajo juramento que no estuvo presente cuando el licenciado Colón Alvarado cumplimentó el documento de traspaso.

En lo referente al testimonio 22148, surgen igualmente fundamentos suficientes para inferir razonablemente que el promovido dio fe de un hecho falso nuevamente. En su *Libro de Registro de Testimonios* el letrado consignó una declaración jurada para otro traspaso de vehículo el **30 de agosto de 2016**, el cual presuntamente fue otorgado por Carmen Haydee Morales Rosario y Edwin Rivera Feliciano. Sin embargo, el 16 de septiembre de 2016, o sea, en una fecha posterior, la señora Morales Rosario aparece radicando una querella ante la uniformada

debido a que no encontraba los documentos de la licencia de su vehículo, el cual, según las constancias del promovido, había sido traspasado semanas antes por esta al señor Rivera Feliciano.

Según se desprendió de la investigación, la Directora Regional del Centro de Servicios al Conductor de Guayama, informó que el 31 de agosto de 2016 se realizaron dos (2) transacciones para el vehículo de motor en cuestión, a saber: 1) el traspaso de Carmen Haydee Morales Rosario a José Cedeño Robles, y; 2) el traspaso de José Cedeño Robles a Edwin Rivera Feliciano. Según surgió de la investigación, el señor Rivera Feliciano —*quien era el esposo de la vendedora*— le entregó los documentos de titularidad al Sr. José Cedeño Robles para que este gestionara el traspaso. Así pues, queda entredicho que la señora Morales Rosario compareció personalmente ante el promovido para traspasar el vehículo directamente al comprador, que el notario se haya asegurado de la identidad de la señora Morales Rosario o que se haya jurado y suscrito el documento de traspaso de título en presencia del promovido.

En fin, no albergamos duda de que las acciones del licenciado Colón Alvarado transgreden la fe pública notarial y, a su paso, mancillan la confianza que los ciudadanos depositan en las instituciones públicas a través del sistema de autenticidad documental. Además,

lacera la excelsa imagen al amparo de la cual debe conducirse y desempeñarse en sus funciones todos los miembros de la clase togada.

A la luz de los hechos y el derecho aplicable, concluimos que las actuaciones del licenciado Colón Alvarado fueron contrarias a lo dispuesto en los Arts. 12, 56 y 57 de la Ley Notarial, *supra*, y las Reglas 12, 29, 65 y 67 del Reglamento Notarial, *supra*. Además, lacera los preceptos albergados en los Cánones 18, 35 y 38 de Ética Profesional.

**IV.**

Luego de reconocer el incumplimiento del abogado promovido, señalamos que, tanto en el 2017 como en el 2018, el letrado atravesó por diferentes procesos disciplinarios los cuales fueron archivados, no sin antes haber sido apercibido de que en el futuro fuese más diligente y cuidadoso para con sus asuntos notariales. De igual forma, destacamos que el promovido aceptó su falta únicamente en cuanto a la consignación falsa relacionada con el testimonio 26109.

Así, pues, evaluado y ponderado el Derecho aplicable, así como las infracciones incurridas por el licenciado Colón Alvarado, decretamos su suspensión inmediata e indefinida del ejercicio de la notaría. Ahora bien, aclaramos que la suspensión aquí decretada no es óbice para que, en la eventualidad, cuando recibamos el Informe

del Procurador General, si el contenido del mismo lo amerita, adoptemos sanciones adicionales como sería, por ejemplo, la suspensión de la abogacía.

Se le ordena al Alguacil de este Tribunal incautar inmediatamente la totalidad de la obra y el sello notarial del licenciado Colón Alvarado y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Además, la fianza se considerará buena y válida por tres años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Asimismo, le ordenamos notificar a todas las personas que habían procurado su práctica notarial su inhabilidad para atender los trabajos notariales que tenía pendiente con ellas y devolverles tanto sus expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*: | | |
| Norberto Colón Alvarado (TS-12,160) | AB-2021-0201 | |

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de agosto de 2023.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión indefinida e inmediata del ejercicio de la notaría del Lcdo. Norberto Colón Alvarado.

Se le ordena al Alguacil de este Tribunal incautar inmediatamente la totalidad de la obra y el sello notarial del licenciado Colón Alvarado y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Además, la fianza se considerará buena y válida por tres años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Asimismo, le ordenamos notificar a todas las personas que habían procurado de su práctica notarial su inhabilidad para atender los trabajos notariales que tenía pendiente con ellas y devolverles tanto sus expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Notifíquese esta *Opinión Per Curiam* y *Sentencia* por correo electrónico al licenciado Colón Alvarado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez está

conforme en parte y disiente en parte y hace constar las siguientes expresiones:

"Si bien estamos conformes con la suspensión inmediata e indefinida del ejercicio de la notaría del Lcdo. Norberto Colón Alvarado, entendemos que la conducta desplegada por este último también ameritaba su suspensión inmediata e indefinida del ejercicio de la abogacía. Ello, pues las violaciones incurridas por éste a los Artículos 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001 *et seq.*; a las Reglas 12, 29, 65 y 67 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y a los Cánones 18, 35 y 38 de Ética Profesional, 4 LPRA Ap. IX, -- según reseñadas en la Opinión *Per Curiam* que hoy se emite -- resultan ser crasas. Al no ser ese el criterio mayoritario, disentimos en parte.".

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo